UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHN L. GOODMAN,

     Petitioner,

v.                                                           Case No.  5:14cv354/WS/CJK

R. SUBASAVAGE,

     Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

     Before the court is a second amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 22).  Respondent filed an answer, submitting relevant portions of the state court record.  (Docs. 28, 34).  Petitioner replied.  (Doc. 32).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court

show that petitioner is not entitled to habeas relief, and that the second amended petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On March 29, 2012, petitioner was convicted by jury verdict of failing to properly register as a sex offender, in violation of Fla. Stat. § 943.0435, in Bay County Circuit Court Case No. 10-CF-2391.  (Doc. 34, Ex. A, p. 125).[1]  Petitioner was adjudicated guilty and sentenced to 75.9 months imprisonment.  (Ex. A, pp. 131-135).  The Florida First District Court of Appeal ("First DCA") affirmed the judgment on June 10, 2013, in a written opinion.  *Goodman v. State*, 117 So. 3d 32 (Fla. 1st DCA 2013) (copy at Ex. G).  Petitioner sought further review in the Florida Supreme Court, which declined to accept jurisdiction and denied review in an order filed December 26, 2013.  *Goodman v. State*, 132 So. 3d 221 (Fla. 2013) (Table).

Petitioner filed his original federal habeas petition on December 23, 2014 (doc. 1, p. 32 (postmark)), which he twice amended (docs. 9, 22).  Petitioner's second amended petition raises three claims:  (1) the trial court erred in convicting petitioner of a nonexistent crime; (2) the trial court erred in instructing the jury on a nonexistent crime; and (3) the trial court erred in failing to acquit petitioner as the evidence was insufficient to support his conviction.  (Doc. 22, pp. 5-8).  Respondent concedes that

---

[1] All references to exhibits are to those provided at Doc. 34, unless otherwise noted.

petitioner exhausted these claims by presenting them in his direct appeal.  (Doc. 28, pp. 13, 20, 24).[2]  Respondent asserts that petitioner is not entitled to habeas relief, because the state court's adjudication of the claims was not contrary to and did not involve an unreasonable application of clearly established federal law.  (Doc. 28, pp. 13-28).

DISCUSSION

<u>Ground One</u>      <u>"The Trial Court Erred In Convicting Petitioner Of A Nonexistent Crime."</u>  (Doc. 22, p. 5).

Petitioner explains the basis of this claim as:  "There is no crime in Florida law of failure to submit travel logs to the Bay County Sheriff's Office."  (Doc. 22, p. 5).  Petitioner does not expound further, except to assert that he raised this claim in his direct appeal.  (*Id*.).  Petitioner's appellate counsel summarized the substance of this claim ("Issue I" of petitioner's direct appeal) as follows:

> The trial court fundamentally erred in convicting Appellant of a nonexistent crime.  Nowhere in section 943.0435 of the Florida Statutes does the Legislature demonstrate its intent to require transient sexual offenders to appear in person at the local sheriff's office on a weekly basis to report where they will be staying for the week to come.  Indeed, this conviction was premised on a nonexistent crime wholly created by a non-legislative entity.  Specifically, the Bay County Sheriff's Office created a local policy requiring transient offenders to submit to written

---

[2] The court construes respondent's concession of exhaustion as applying only to the specific claims presented in petitioner's second amended petition.  The court does not construe the concession as extending to petitioner's attempted modifications of his claims as proposed in his reply to respondent's answer.  *See* 28 U.S.C. § 2254(b)(3).

weekly logs after having a brainstorming session in order to close a purported loophole in section 943.0435.

(Ex. E, p. 15).  Petitioner's counsel characterized the issue as "involving matters of statutory construction".   (Ex. E, p. 16).   The First DCA likewise construed petitioner's claim:

> At issue is whether Bay County Sheriff Office's policy of requiring registered sexual offenders, who are perpetually itinerant within the county, to report in person to its main office by 10 a.m. each Monday morning to specify where they intend to spend the next seven nights is consistent with the applicable sexual offender statute, section 943.0435(4)(b), Florida Statutes (2010).  John Luther Goodman III, a registered sex offender, claims the policy goes beyond what the statute required of him, and that his felony conviction for failing to comply with the policy is flawed.  He challenges the policy and the special jury instruction that was given.  We disagree and affirm.

## I.

> Since his 1989 conviction for lewd and lascivious/indecent assault on a child under sixteen, Goodman has been a registered sexual offender subject to the requirements of Florida's sexual offender registration statute.  Though the record is incomplete, it appears he has generally been in compliance with registration requirements related to his Florida driver's license listing him as a transient, his establishment of a general delivery mail address, and his twice-yearly re-registration requirements through the end of 2010.  Because Goodman lacks a permanent or temporary residence, and is essentially a homeless itinerant, he has sporadically run afoul of the county's transient policy, which is set forth in a two-page signature form that sexual offenders (and sexual predators) are given to sign when they register:

>> In accordance with Florida State Statutes 943.0435 (for offenders) and 775.21 (for predators), the Bay County Sheriff's Office is immediately enforcing new agency

policy guidelines for sexual offenders and predators which addresses the transient status requirements for providing transient information to the Bay County Sheriff's Office in a specific timely manner. **It is a third degree felony offense if the offender or predator does not report this change in person at the Sheriff's Office. Please review the Florida Department of Law Enforcement notice of responsibilities attached.**

The Statutory requirements for the offender or predator are to provide an address for the transient residence or other location that he or she will be occupying during the time which he or she fails to establish or maintain a permanent or temporary residence, [pursuant to] 943.0435(4)(b) or [section] 775.21(g)(2).

1. The offender will respond in person to the Bay County Sheriff's Office within 48 hours to declare he or she is transient and has no permanent or temporary residence. At that time he will be required to sign a registration form declaring the transient status. At that time a current mailing address will also be required. The offender or predator will need to respond to the Sheriff's Office location of 3421 N Hwy 77, Panama City to complete the process Monday through Friday (excluding weekend and holidays) from 8:00 am to 4:00 pm.

2. All transient sexual offenders and predators will provide a written weekly location log "prior" to staying at their listed locations each Monday morning, no later then [sic] 10:00 am [sic]. If the offender or predator declares the transient status during the work week (after Monday), they will provide a written list of locations through the following Monday prior to staying at them.

3. a) A Florida drivers [sic] license or identification card must also be obtained with "Transient, General Delivery, Panama City, Florida 32401" showing on the face of the card. The offender or predator is also required

to provide a current mailing address to [sic] Department of Motor Vehicle to be logged also.

     b) The valid mailing address is required for correspondence you will receive from the Florida Department of Law Enforcement as well as the Bay County Sheriff's Office. The correspondence will be date and time sensitive. It will require you to check your mailing address on a regular basis. If you have no mailing address to provide, you will be required to use the downtown location as General Delivery, Attention to: Offender Name, Panama City, Florida 32401. The Post Master will not hold the mail indefinitely and it is your responsibility to check it regularly. You may want to speak with the Post Master about your correspondences if you will be staying in transient status for an extended period.

     c) Officers should be able to locate you by the log you provide for your transient locations. Your log should reflect the date, location address, type of location, vehicle information (if applicable). If your log reflects you to be at one location and you have to leave that location, new location information should be provided to the Bay County Sheriff's Office, forwarded to the Crime Analysis Unit 248–2076 or 248–2083 prior to the move.

Goodman is familiar with this policy, having signed forms at least twice in the past few years.

Goodman was charged with failure to appear in person and provide the required information at the Sheriff's Office from June 29, 2010, to September 6, 2010. He moved to dismiss the charge, arguing that the policy's burdens exceeded those the statute imposed upon him. He also objected to the special jury instruction prepared by the State that was used. A jury convicted him on March 29, 2012 and he was sentenced immediately thereafter to 75.9 months in prison.

II.

## A.

Our analysis begins with the statutory definitions in effect in 2010 during the time Goodman was alleged to have violated state law. Undergirding the sexual offender registration system are three key definitions of potential residences a registrant might have: permanent, temporary, and transient. These definitions have specific statutory meanings. First, a "permanent residence" is defined as "a place where the person abides, lodges, or resides for 5 or more *consecutive days*." § 775.21(k), Fla. Stat. (2010) (emphasis added). Second, a "temporary residence" is defined as:

> a place where the person abides, lodges, or resides, including, but not limited to, vacation, business, or personal travel destinations in or out of this state, for a period of 5 or more days *in the aggregate during any calendar year* and which is not the person's permanent address or, for a person whose permanent residence is not in this state, a place where the person is employed, practices a vocation, or is enrolled as a student for any period of time in this state.

Id. § 775.21(l) (emphasis added). Finally, a "transient residence" – a category first added to the statute and effective on May 26, 2010 – is defined as:

> a place or county where a person lives, remains, or is located for a period of 5 or more *days in the aggregate during a calendar year* and which is not the person's permanent or temporary address. The term includes, but is not limited to, a place where the person sleeps or seeks shelter and a location that has no specific street address.

Id. § 775.21(m) (emphasis added); see Ch. 2010-92, Laws of Fla. No other explicit statutorily defined types of residences exist.

These three definitions attempt to capture the universe of possible residences, but some play in the joints exists. For example, it

appears that an uncategorized fourth category of residence exists, which we will call an "itinerant" residence.  An example shows how this non-statutory classification can arise.  Consider an offender who lives for thirty consecutive days in a relative's house, which thereby becomes his "permanent residence" under the statute (because he has resided there for more than five consecutive days).  The offender has a falling out with the relative and goes to a homeless shelter for three consecutive days; at this point, the homeless shelter falls into none of the categories – it is not a permanent, temporary, or transient residence as defined in the statute.  It falls into an undefined, uncategorized fourth category – an "itinerant" residence.  The offender then decides to sleep on a park bench the next night, in the neighboring woods the following night, and under an overpass on the third night; if he does not return to reside at any of these three specific locations for a total of five or more days for the calendar year, these locations are also itinerant residences.

If called upon to designate whether the bench, woods or overpass are permanent, temporary or transient residences as defined in the statute, the offender would have difficulty doing so; they would be uncategorized itinerant locations.  If the bench, woods and overpass are all in the same county they might be considered transient residences (remembering that a transient residence can be a "place or county"); but the statutory requirement of "5 or more days in the aggregate during any calendar year" would still apply.  In theory, an itinerant offender could have seventy-three (365/5) permanent, temporary or transient residences in a calendar year or 365 itinerant ones (a possibility, given the Sheriff's Office's position at trial that a change of even five feet in the woods is a reportable change in location).  Other patterns and permutations of permanent, temporary, transient and itinerant residencies are possible.

With these many possibilities in mind, the policy that Goodman was charged with violating was adopted under the authority of section 943.0435(4)(b), which states:

> A sexual offender who <u>vacates</u> a **permanent, temporary, or transient** residence <u>and</u> <u>fails to establish or maintain another</u> **permanent, temporary, or transient** residence

shall, within 48 hours after vacating the **permanent, temporary, or transient** residence, report in person to the sheriff's office of the county in which he or she is located. The sexual offender shall specify the date upon which he or she intends to or did vacate such residence. The sexual offender must provide or update all of the registration information required under paragraph (2)(b). The sexual offender must provide an address for the residence or other place that he or she is or will be located during the time in which he or she fails to establish or maintain a **permanent or temporary** residence.

§ 943.0435(4)(b), Fla. Stat. (2010) (emphasis added). The underlines and bolds have a purpose. The underlines emphasize how the statute can be violated. Putting the last sentence aside for the moment, a violation of subsection (4)(b) requires that a sexual offender: (1) has vacated a permanent, temporary, or transient residence and failed to establish another; and (2) *either* (a) has failed to report to the sheriff's office within 48 hours of the vacation or (b) has reported timely to the sheriff's office, but failed to specify the date or provide the updated information the statute requires.

The 2010 version of Standard Jury Instruction 4.11(d) captured many, but not all, of the possible violations of section 943.0435(4)(b). For example, instruction 4.11(d)(3)b covered the situation where an offender knowingly fails to report to the sheriff's office within 48 hours of vacating a permanent residence without establishing/maintaining another permanent or temporary residence (the instruction's 2012 version is updated to include transient residences). The standard instruction, however, does not cover the situation where an offender vacates a temporary or transient residence.

Likewise, no standard instruction existed for violations of the last sentence of section 943.0435(4)(b), which is worded slightly differently from the preceding three sentences. The bold emphasizes the point that the word "transient" is included in the first sentence of the statute but is absent in the last. The implication of this omission is that when an offender has vacated a permanent, temporary, or transient residence,

but fails to establish a permanent or temporary (but not a transient) residence, he must provide information on his location that the last sentence requires.   Stated differently, an offender who vacates a statutorily-defined residence, but establishes only a transient residence or none at all (i.e., an itinerant residence), has an ongoing responsibility to provide information for where he can be located during the time he is transient (or itinerant).   How this last sentence is implemented by the Sheriff's Office and translated into a special jury instruction is the crux of this case.

B.

At the hearing on the motion to dismiss, the State argued that it was the legislature's intent to have all sexual offenders register each and every time they changed residences, but it acknowledged that section 943.0435(4)(b) provided no guidance on the manner or means of doing so.   State law enforcement agencies provided no guidance, saying it is a county-by-county determination of how each jurisdiction chooses to implement the statute.   With this lack of direction, but a need to have protocols in place, the Sheriff's Office developed a policy to ensure it could keep track of "transient" sexual offenders at all times whatever their statutory residential classification might be (keeping in mind the "itinerant" category as well).   To this Goodman argued that he could be charged only with a violation of the statutory language, which he argued the policy did not reflect.   The trial court denied the motion, mindful of the burdens the policy imposed on offenders like Goodman, but finding nothing "inherently flawed in the statute."

The motion to dismiss having been denied, Goodman's counsel objected at the charge conference that Goodman would be held strictly liable under the State's legal theory.   Because none of the standard instructions captured the elements of a violation of the last sentence of section 943.0435(4)(b) as applied to Goodman, the State prepared a special instruction, adopted by the trial court, which read as follows:

> To prove the crime of failure to Register as a Sexual Offender, the State must prove the following three elements beyond a reasonable doubt:

1.  [Appellant] has agreed or stipulated that he has been convicted as a sexual offender; therefore, you should consider the sexual offender status element as proven by agreement of the parties.
2.  [Appellant] established a transient residence status in Bay County, Florida.
3.  [Appellant] knowingly failed to report in person as required to notify the sheriff of Bay County where he would be located for the following week.

Goodman objected to only the third part of the instruction, saying it was beyond the language of the last sentence of 943.0435(4)(b) and that none of the standard jury instructions existing in 2010 covered his situation.  See In re Standard Jury Instructions in Criminal Cases – Report No. 2007-4, 983 So. 2d 531, 531 (Fla. 2008) (adopting new instructions 11.14 and 11.14(a)-(g) "pertain[ing] to offenses involving the failure to register as a sexual offender, as defined in section 943.0435, Florida Statutes (2007)".)  Consistent with his view that the instruction imposed a strict liability offense, Goodman's counsel delivered an opening statement consisting of little more than references to classic television shows, such as "Happy Days," "Gilligan's Island," and "Petticoat Junction," ostensibly to contrast that "Life was simple in those shows" but life was not simple for Goodman under the policy.

Goodman claims on appeal that the Sheriff's Office did not have the authority to impose either the report-in-person-each-Monday-morning requirement or the log book requirements on transient sexual offenders.  As to this point, it is true that the plain language of section 943.0435(4)(b) does not specifically authorize either requirement. But the statute clearly envisions that sheriff's offices must establish some protocols by which a transient registered offender presents himself in person and provides locational information.  We must therefore determine whether the policy is in accord with the statute.

While Goodman claims the policy at issue is excessive, it is not. Under section 943.0435(4)(b), transients are required to report in person within 48 hours each time they change a transient location. Consistent with the requirement of the statute, the policy compels a

"transient" offender to appear in person within forty-eight hours "to declare he or she is transient and has no permanent or temporary residence."  They must make this requisite appearance in person if the 48 hours falls other than on a Monday (Offenders who declare "the transient status during the work week (after Monday) . . . will provide a written list of locations through the following Monday prior to staying at them.").  Consistent with the last sentence of section 943.0435(4)(b), the policy thereafter compels this "transient" class of offenders to appear weekly at the sheriff's office to provide the offender's prognostication of where he will be for the upcoming week.  We find no inconsistency in the sheriff's office policy reporting requirement under the circumstances of this case as applied to Goodman; he must report within 48 hours and then once a week thereafter to provide notice of his whereabouts until he establishes a permanent or temporary residence.

We note, however, that the special instruction at issue does not include a requirement that the State first prove that Goodman vacated a permanent, temporary or transient residence and then failed to establish a new one.  But is it a prerequisite that an offender have vacated a residence, and failed to establish another, for the last sentence of section 943.0435(4)(b) to apply?  As a matter of statutory interpretation the answer appears to be yes, but we need not make a definitive ruling in this case.  The reason is that itinerant offenders like Goodman will likely always be in the process of vacating a transitory residence of some type; that is the nature of their nomadic existence.  As the Sheriff's Office forthrightly recognized, itinerant offenders face a Catch 22: whenever an offender changes a location, by even a short distance, they potentially void the possibility of establishing a permanent residence (which must be five or more consecutive days) and they change their existing residence status, triggering reporting requirements.  The limited record in this case, for example, shows that Goodman predominantly was residing at many different locations in the woods around Panama City, on church property, or on a "trolley," typically in patterns that would subject him to the requirements of section 943.0435(4)(b).  Had Goodman been charged only with a simple failure to report within 48 hours (versus a failure to report weekly and provide locational information), a modified version of

Standard Instruction 11.14(d), as it existed in 2010, would have applied, adapting it to reflect vacation of a transient rather than a permanent residence. But Goodman did not offer such an instruction, and whatever error he might claim as to the lack of a more precise instruction on the "vacated/failed to establish" portion of the statute is not before us.

Turning to the policy as applied to him, we find no error in the requirement that Goodman report in person weekly to provide the information required by the last sentence of section 943.0435(4)(b) during his "transient" status. Admittedly, the last sentence does not specify that the required information must be provided in person at the sheriff's office, but we have difficulty imagining a situation where a registered offender who has not yet established a permanent or temporary residence for a week or more would not trigger the appear-in-person-within–48–hours portion of the statute. As the State points out, "if a sex offender has to move every five days to remain 'transient' or report after five days that their address has become 'permanent' or 'temporary' and has 48 hours to report that change, the seven-day requirement of the Bay County Sheriff's Office is consistent with the requirement in § 943.0435(4)(b)." We agree and hold that the report-in-person-each-Monday-morning requirement in the policy is consistent with the statute as applied to Goodman's situation; likewise, the corresponding portion of the special instruction was not erroneous.

Finally, we turn to the policy's requirement that offenders who are transient without a permanent or temporary residence provide a weekly log of their expected whereabouts. Goodman is subject to the statutory obligation to provide the location at which he will be located because he stipulated that his status was "transient" in the second part of the jury instruction. Nothing in the last sentence of section 943.0435(4)(b) compels any particular means for compiling and recording the addresses or places where transient offenders will be located. We see no meaningful difference between the statutory requirement of providing addresses/locations and the Sheriff's Office policy of a log book. As to the jury instruction issue, we can envision an instruction that simply used the statutory language: "[Defendant] knowingly failed to provide an address for the residence or other place that [he][she]

would be located during the time in which [he][she] failed to establish or maintain a permanent or temporary residence." The question is whether the special instruction – which characterized the offense as a failure to "notify the sheriff of Bay County where he would be located for the following week" – is an inaccurate instruction as to Goodman's responsibilities under the statute. We hold that it is not. While the statutory language would have been preferable, we conclude that the language used did not contribute to jury confusion or misstate Goodman's responsibilities under the statute.

*Goodman v. State*, 117 So. 3d 32, 33-39 (Fla. 1st DCA 2013) (footnote omitted) (copy at Ex. G). The Florida Supreme Court denied review. *Goodman v. State*, 132 So. 3d 221 (Fla. 2013) (Table).

Respondent argues that federal habeas relief should be denied because the state court's rejection of the claim was consistent with clearly established federal law, but respondent fails to identify any applicable federal standard. (Doc. 28, pp. 13-20). The undersigned nevertheless concludes that federal habeas relief should be denied because petitioner's claim raises a purely state law question involving the interpretation of Florida law.

Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.")

(internal quotations and citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 67-68,

112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions.").  "Questions

of state law rarely raise issues of federal constitutional significance, because '[a]

state's interpretation of its own laws provides no basis for federal habeas corpus

relief, since no question of a constitutional nature is involved.'"  *Tejada v. Dugger*,

941 F.2d 1551, 1560 (11th Cir. 1991) (*quoting Carrizales v. Wainwright*, 699 F.2d

1053 (11th Cir. 1983)).

      Petitioner's presentation of this issue in his second amended habeas petition,

which is modeled after his counseled state-court appellate brief, makes no mention

of the United States Constitution, a right protected by the Constitution or federal

law, any federal standard, or any federal case law.  Respondent's answer likewise

does not identify any federal standard, but instead analyzes the claim under state law

standards.  Petitioner's reply urges this court to "liberally construe" his claim as

raising a wholly different issue – that Fla. Stat. § 943.0435 is unconstitutional

because "the legislature delegated unlimited and open-ended power to define the

crime of failure to register as a sex offender pursuant to §943.0435 to an

administrative agency, the Bay County Sheriff's Department in violation of the

separation of powers and due process protections."  (Doc. 32, p. 2 (*citing Touby v.*

*United States*, 500 U.S. 160, 165 (1991))).   The court declines to construe petitioner's second amended petition (or direct appeal brief) as asserting a constitutional separation of powers or due process claim, as those pleadings make no suggestion of such arguments.   The undersigned also declines to comment one way or the other on the validity of such an argument, were it actually raised.   To emphasize, the First DCA accurately framed the issue as:   "whether Bay County Sheriff Office's policy of requiring registered sexual offenders, who are perpetually itinerant within the county, to report in person to its main office by 10 a.m. each Monday morning to specify where they intend to spend the next seven nights is consistent with the applicable sexual offender statute, section 943.0435(4)(b), Florida Statutes (2010)."   *Goodman*, 117 So. 3d at 33.

Any attempt by petitioner to <u>amend</u> his second amended petition to include a separation of powers or due process challenge would be futile, as petitioner would run squarely into the doctrine of procedural default (petitioner's failure to present the federal constitutional nature of his claim to the state court in his direct appeal, and the existence of state procedural bars prohibiting him from returning to state court to do so now).   As petitioner's Ground One raises a purely state law question, it provides no basis for federal habeas relief.

<u>Ground Two</u>        "The Trial Court Erred In Instructing The Jury On A Nonexistent
               Crime."  (Doc. 22, p. 6).

This claim involves the trial court's jury instruction on the elements of

petitioner's offense.  The court instructed the jury, in relevant part, as follows:

> To prove the crime of failure to register as a sex offender the state
> must prove the following three elements beyond a reasonable doubt.
> One, John Luther Goodman has agreed to stipulate that he has been
> convicted as a sexual offender, therefore, you should consider the
> sexual offender status element as proven by agreement of the parties.
> Two, John Luther Goodman established a transient residence status in
> Bay County, Florida.  Three, John Luther Goodman knowingly failed
> to report in person as required to notify the sheriff of Bay County where
> he would be located for the following week.

(Ex. D, p. 59).  Petitioner claims this instruction was error because "there is no crime

943.0435(4)(b) of failure to provide travel logs to the Sheriff['s] Department."  (Doc.

22, p. 6).  Petitioner does not expound on this claim further, except to assert that he

raised this claim in his direct appeal.   (*Id*.).   Petitioner's appellate counsel

summarized the substance of this claim ("Issue II" of petitioner's direct appeal) as

follows:

> The fundamental error [the trial court's allegedly convicting
> petitioner of a nonexistent crime] was further compounded by the use
> of jury instructions that not only ignored the approved standard jury
> instructions for such alleged crimes, but went so far as to ignore the
> actual statutory language when creating a special instruction.  This left
> Appellant and the jury with instructions founded upon a nonexistent
> crime.

(Ex. E, p. 15).  The First DCA rejected the jury instruction claim, as recited above. *Goodman*, 117 So. 3d at 33-39 (copy at Ex. G).  The Florida Supreme Court denied review.  *Goodman v. State*, 132 So. 3d 221 (Fla. 2013) (Table).

Respondent agrees that petitioner exhausted this claim, but argues that federal habeas relief should be denied because the state court's rejection of it was consistent with clearly established federal law.  (Doc. 28, pp. 20-24).  Again, respondent does not identify an applicable federal standard.

The undersigned concludes that federal habeas relief should be denied because petitioner's challenge to the jury instruction does not raise a question of constitutional dimension, but instead raises a purely state law issue.  The United States Supreme Court has stated:

> His [the trial judge's] action has been affirmed by the highest court of the Commonwealth.  We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied.  We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

*Gryger v. Burke*, 334 U.S. 728, 731, 68 S. Ct. 1256, 92 L. Ed. 1683 (1948); *see also, e.g., Schaefer v. Leone*, 443 F.2d 182, 184 (2d Cir. 1971) (holding that federal district court lacked jurisdiction over state prisoner's § 2254 claim that the trial court's alleged misinterpretation of the requirements of the applicable Connecticut statute

in instructing the jury resulted in his allegedly unconstitutional conviction of a nonexistent crime; the prisoner's claim "[did] not raise[ ] any question of substantial constitutional significance.").

Petitioner attempts in his reply to broaden his state-law claim to one of constitutional dimension by arguing that the instruction (1) allowed the State to "constructively amend" the information and obtain his conviction for "a charge not made against him in the indictment"; and (2) allowed his conviction under a statute that was facially unconstitutional because it violates the separation of powers doctrine by "delegate[ing] legislative power to an administrative agency." (Doc. 32, pp. 2-3). The court declines to construe petitioner's second amended petition (or direct appeal brief) as asserting a constitutional separation of powers or due process claim, as those pleadings make no suggestion of either argument. Any attempt by petitioner to <u>amend</u> his second amended petition to include a separation of powers or due process challenge would be futile due to the federal claims being procedurally defaulted. As petitioner's Ground Two raises a purely state law question, it provides no basis for federal habeas relief.

<u>Ground Three</u>        <u>"The Trial Court Erred In Failing To Acquit Petitioner As The
Evidence Was Insufficient To Support Conviction."</u>  (Doc. 22, p.
8).

Petitioner contends: "[t]he instant case should never have survived
Petitioner's sworn motion to dismiss much less Defense Counsel's motion for
Judgement [sic] of Acquittal."  (Doc. 22, p. 8).  Petitioner does not expound on this
claim further, except to assert that he raised this claim in his direct appeal.  (*Id.*).
Petitioner's appellate counsel summarized the substance of this claim ("Issue III" of
petitioner's direct appeal) as follows:  "[T]he totality of the evidence demonstrated
that Appellant was in full compliance with section 943.0435.  Given that there were
no remaining charges, Appellant should be acquitted."  (Ex. E, p. 15).  Petitioner's
direct appeal brief explained:

> The instant case should never have survived Appellant's Sworn
> Motion to Dismiss, much less Defense Counsel's Motion for Judgment
> of Acquittal.  Even 'when criminal legislation is susceptible to more
> than one meaning, it must be strictly construed in favor of the accused.'
> *Jordan*, 801 So.2d at 1035.  Here, not only did the evidence establish
> Appellant's full compliance with all the statutory requirements, but it
> also failed to establish – even assuming the agency policy guidelines
> were somehow legally codified – that Appellant vacated and failed to
> establish or maintain a new transient residence so as to invoke the 48-
> hour registration update.

(Ex. E, pp. 29-30 (*quoting Jordan v. State*, 801 So. 2d 1032 (Fla. 5th DCA 2001))).

The First DCA affirmed petitioner's conviction (as outlined above), as did the
Florida Supreme Court.  (Exs. G, N).  Respondent agrees that petitioner exhausted

this claim, but argues that federal habeas relief should be denied because the state court's rejection of it was consistent with the standard announced in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  (Doc. 28, pp. 24-28).

Petitioner's argument to the state court and here cites exclusively to state cases, and all of his substantive arguments address Florida law (specifically, interpretation of the statutory reporting requirements of Fla. Stat. § 943.0435 as it relates to transient sexual offenders, and interpretation of the reporting requirements of the Bay County Sheriff's Office policy adopted under the authority of § 943.0435). Petitioner's claim is confined to state law and state standards, and does not raise a federal sufficiency of the evidence claim grounded in the Fourteenth Amendment's Due Process Clause.  *Cf. Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847, 850 (11th Cir. 2008) (distinguishing, in the context of exhaustion, a federal sufficiency of the evidence claim from a state sufficiency of the evidence claim; concluding that the petitioner's state sufficiency of the evidence claim, which relied exclusively on state cases and substantively addressed only state law (that there was no evidence of reasonable fear on the part of the victim as defined by state law) did not present a federal sufficiency of the evidence claim); *Cook v. McNeil*, 266 F. App'x 843, 845-46 (11th Cir. 2008) (distinguishing, in the context of

exhaustion, a federal sufficiency of the evidence claim from a state sufficiency of the evidence claim; concluding that the petitioner's state sufficiency of the evidence claim, which cited exclusively to state cases and substantively addressed only state law, did not present a federal sufficiency of the evidence claim; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court.").[3]

Petitioner's reply attempts to broaden the claim by asserting that petitioner's conviction is unconstitutional because (1) the conviction fails to satisfy the due process standard set forth in *In re Winship*, 397 U.S. 358 (1970), and *Jackson v. Virginia*, 443 U.S. 307 (1979); and (2) the charging document was deficient in that it was "based on an affidavit provided by the Bay County Sheriff's Office rather than the State Attorney for the Fourteenth Judicial Circuit of Florida." (Doc. 32, pp. 3-4) ("Respondent's response to Petitioner's Issue III . . . totally misses the thrust of his argument: that the State of Florida failed to properly **charge** Petitioner before proceeding to trial."). The court declines to construe petitioner's second amended petition (or direct appeal brief) as asserting a constitutional due process challenge to

---

[3] The undersigned cites these cases only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

the sufficiency of the evidence or the charging document, as such construction goes beyond what petitioner argued in his § 2254 petition and state court appeal.  As Ground Three presents a purely state-law based challenge to the sufficiency of the evidence, the claim provides no basis for federal habeas relief.

Even giving petitioner the benefit of all doubt and analyzing his claim under the federal due process standard without giving deference to the state court's decision, petitioner still is not entitled to relief.  The Due Process Clause of the Fourteenth Amendment requires the state to prove each element of the offense charged beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but to federal law for the determination of whether the evidence was sufficient under the Due Process Clause. *Coleman v. Johnson*, 566 U.S. ——, ——, 132 S. Ct. 2060, 2064, 182 L. Ed. 2d 978 (2012).  For federal sufficiency review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319 (quotation omitted).

To convict petitioner of violating Fla. Stat. § 943.0435, the State was required to prove the elements outlined in the First DCA's opinion.  At trial, Bay County

Sheriff's Office Investigator Steven O'Brien testified that he was in charge of sex offender compliance and registration from February 2, 2010, through July 15, 2011. (Ex. D, p. 24).  O'Brien explained that a sex offender is required to register either every six months or every three months, depending on his or her offense.  Petitioner was required to register every six months.  (*Id*.).  Registering involves the offender reporting to the Sheriff's Office and either confirming that all of his information remains unchanged, or updating any information that has changed.  (*Id*.).  In addition, if the offender's residence changes between the six-month (or three-month) registration, the offender is required to inform the sheriff's office of the change in residence within 48 hours.  (*Id*.).  Someone who is registered as a transient, as petitioner was, is required to report in person to the Bay County Sheriff's Office every Monday by 10:00 a.m. and provide a listing or log of where he will be every night that week (Monday night through Sunday night).  (*Id*., p. 27).  The transient offender's description of his location for the upcoming week must be detailed enough to allow verification by law enforcement.  (*Id*, pp. 27-38.).  Investigator O'Brien testified that because petitioner's residence status was "transient", he was required to report to the Sheriff's Office every Monday morning and provide a listing of where law enforcement could locate him every night of that week (Monday

through Sunday).  (*Id.*, pp. 28-29).  Petitioner provided no transient logs for the period June 29, 2010, through September 6, 2010.  (*Id.*, p. 29).

Viewing the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt, that petitioner failed to properly register as a sex offender, in violation of Fla. Stat. § 943.0435.  Petitioner is not entitled to federal habeas relief on Ground Three.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the second amended petition for writ of habeas corpus (doc. 22), challenging the judgment of conviction and sentence in *State of Florida v. John Luther Goodman*, Bay County Circuit Court Case No. 10-CF-2391, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 1st day of November, 2016.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.